# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| JAMES NADALIN, | ) | |
| | ) | |
| Plaintiff, | ) | 2:24-cv-01174 |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES STEEL | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendant. | | |

## <u>MEMORANDUM ORDER GRANTING MOTION TO REMAND</u>

Before the Court is Plaintiff James Nadalin's ("Plaintiff" or "Nadalin") Motion to Remand, (ECF No. 13), alleging that Defendant United States Steel Corporation ("Defendant" or "U.S. Steel") improperly removed this case to federal court based on Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a). U.S. Steel filed a brief opposing the Motion to Remand. (ECF No. 18). For the following reasons, the Court determines it lacks subject matter jurisdiction, and will therefore GRANT that Motion and REMAND the case to state court forthwith.[1] All other pending motions are DISMISSED AS MOOT.[2]

---

[1] Other members of this Court have done the same in parallel cases arising from U.S. Steel's other nearby facilities. Those cases involved other employees covered by the relevant labor contract with the same labor union, and this member of the Court finds their reasoning persuasive. *See Guidas v. United States Steel Corporation*, No. 2:24-cv-305, 2024 WL 2729905 (W.D. Pa. May 28, 2024) (Stickman, J.); *Shaffer v. United States Steel Corporation*, No. 2:24-cv-969, ECF No. 30 (March 18, 2025) (Bissoon, J.).

[2] Also pending on the docket are U.S. Steel's Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), (ECF No. 15), and a Motion for Status Conference filed by the Plaintiff, (ECF No. 27). The Court also previously entered an Order to Show Cause as to why this case was not related to other, similar cases removed by U.S. Steel to this Court. (ECF No. 17). Because there is not federal jurisdiction in this case, the Court need not reach these other matters. Those Motions and the Show Cause Order will be dismissed as moot, and vacated, all without prejudice, and as the case may be.

1

## I.    Factual and Procedural Background

Nadalin filed this putative class action in the Court of Common Pleas of Allegheny County in Pennsylvania. The Complaint alleges that U.S. Steel violated the Pennsylvania Minimum Wage Act ("PMWA") by failing to compensate employees at the Edgar Thomson Plant[3] in Braddock, Pennsylvania, operated by U.S. Steel, for "all hours worked" as required by that statute. Specifically, Nadalin says U.S. Steel failed to pay employees for pre- and post-shift required activities like walking to and from the plant locker room, donning and doffing personal protective equipment ("PPE"), and showering after shift, all of which he claims are "hours of work" under the PMWA.

U.S. Steel removed the case to this Court, allegedly based on complete LMRA preemption. In its notice of removal, U.S. Steel says that Nadalin's suit would necessarily expand the terms of the Basic Labor Agreement ("BLA"), the document governing the relationship between U.S. Steel and unionized workers at the Edgar Thomson Plant.[4] Among other terms, the BLA specifically describes compensable hours of work, including for calculation of overtime premium pay, under the labor contract, and what activities are included or excluded from that calculation. Because the LMRA governs contracts "between an employer and a labor organization"—and preempts state law interpreting such contracts—U.S. Steel removed this suit, saying that interpretation of the BLA is essential to the resolution of the claims asserted, resolution will be governed exclusively by federal substantive labor law, and this case therefore belongs in federal court. 29 U.S.C. § 185; *see Local 174, Teamsters v. Lucas Flour*, 369 U.S. 95, 103-04 (1962).

---

[3] The Edgar Thomson Plant is one of the four facilities that, together, make up the Mon Valley Works, an "integrated steelmaking operation" owned by U.S. Steel in Western Pennsylvania. (ECF No. 1-1, at ¶ 5).

[4] Workers at the Edgar Thomson Plant, as well as other U.S. Steel employees, are represented by the United Steel, Paper, and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union ("USW"). The BLA is the result of negotiations between U.S. Steel and USW.

Nadalin moved to remand, arguing that resolving the wage and hour claims asserted here and interpretation of the BLA are not "inevitably intertwined" and thus state court is a proper forum. *See Trainer v. West Penn Allegheny Health Sys.*, 743 F. Supp. 3d 664, 669 (W.D. Pa. 2024) (holding state law claim was not preempted when the issue was the application of the PMWA rather than provisions of the labor contract).

## II. Legal Analysis

Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A federal court must "therefore be certain that there is a basis for [its] authority to hear each suit before proceeding to the merits." *Peace Church Risk Retention Grp. v. Johnson Controls Fire Prot. LP*, 49 F.4th 866, 869-70 (3d Cir. 2022). A defendant who removes a suit that was originally filed in state court to federal court under 28 U.S.C. § 1441(a) bears the burden of demonstrating that a federal court actually has jurisdiction. *Avenatti v. Fox News Network, LLC*, 41 F.4th 125, 130 (3d Cir. 2022). If a court determines the burden to show jurisdiction has not been met—or if it determines that it no longer has jurisdictional authority to hear the suit at any point during the litigation—it must remand the case to the state court in which it began. 28 U.S.C. § 1447(c); *Royal Canin USA, Inc. v. Wullschleger*, 604 U.S. 22, 28 (2025). Doubts are resolved "in favor of the plaintiff's choice of forum in state court." *Avenatti*, 41 F.4th at 130 (citing *Brown v. Jevic*, 575 F.3d 322, 326 (3d Cir. 2009)).

One possible basis for federal subject matter jurisdiction, and thus for removal, is a case "arising under" federal law. 28 U.S.C. § 1331. Federal defenses, "including the defense of preemption," are insufficient to show that a case arises under federal law, even if both parties anticipate litigating the foreshadowed federal law issue. *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 14 (1983). But removal may be proper "where federal law completely

preempts a plaintiff's state-law claim," *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 475 (1998), because "[o]nce an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state-law claim is considered, from its inception, a federal claim, and therefore arises under federal law," *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987).

U.S. Steel asserts just such a basis here: it says that this case "arises under" federal law because the federal LMRA completely preempts all interpretation of labor contracts, and the resolution of this state-law-based wage and hour claim turns on the interpretation of the BLA. And, notably for U.S. Steel, "[t]he complete pre-emption corollary to the well-pleaded complaint rule is applied primarily in cases raising claims pre-empted by § 301 of the LMRA." *Caterpillar*, 482 U.S. at 393. Section 301 is invoked so frequently because any "state rule that purports to define the meaning or scope of a term in a contract suit . . . is pre-empted by federal labor law." *Allis-Chalmers Corp v. Lueck*, 471 U.S. 202, 210 (1985).

But the Supreme Court has also directed that "§ 301 cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law." *Livadas v. Bradshaw*, 512 U.S. 107, 123 (1994). That is, "most state laws that are not pre-empted by § 301 will grant nonnegotiable rights that are shared by all state workers." *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 407 n.7 (1988). The first question for the Court's analysis, then, is whether the PMWA confers such nonnegotiable rights shared by all state workers.

The PMWA confers exactly such nonnegotiable rights. *See Guidas*, 2024 WL 2729905, at *7. The PMWA provides a number of supplemental protections beyond those in federal law, *id.*, and does not permit waiver of those protections by contract, 43 Pa. Stat. § 333.113; *see Verma v. 3001 Castor, Inc.*, 937 F.3d 221, 229 (3d Cir. 2019) ("The whole point of . . . the PMWA is to

4

protect workers by overriding contractual relations through statute."). Though the BLA distinguishes between compensable and noncompensable activities within the scope of the BLA,[5] the PMWA does not permit U.S. Steel and USW, through the bargaining process, to extinguish Pennsylvania employees' right to be paid for all hours worked as defined by state law and to the extent that state law would compel it.

The fact that a nonnegotiable right is conferred by the PMWA, however, does not end the analysis. *Lingle*, 486 U.S. at 407 n.7. U.S. Steel may still carry its burden of demonstrating complete preemption, and thus invoke federal question jurisdiction, by showing that the claim here is interdependent with the terms of the BLA. *See id.* at 407 ("[T]he state-law remedy in this case is 'independent' of the collective-bargaining agreement in the sense of 'independent' that matters for § 301 pre-emption purposes: resolution of the state-law claim does not require construing the collective-bargaining agreement."). U.S. Steel points to Third Circuit precedent that upheld LMRA preemption of a PMWA claim that where interpretation of the collective bargaining agreement was necessary to determine whether post-shift, allegedly compensable activities were actually required of employees. *Pa. Fed. of the Bhd. of Maint. of Way Emps. v. Nat'l R.R. Passenger Corp. (Amtrak)*, 989 F.2d 112, 115 (3d Cir. 1993). It also cites to a number of similar cases within this Circuit where that court determined that PMWA (or similar) claims were preempted by § 301

---

[5] Specifically, Appendix N to the BLA provides:

> [U.S. Steel] is not obligated to pay Employees for preparatory or closing activities which occur outside of their scheduled shift or away from their worksite (i.e., so-called 'portal-to-portal activities'). Such activities include such things as donning and doffing of protective clothing (including such items as flame-retardant jacket and pants, metatarsal boots, hard hat, safety glasses, ear plugs, and a snood or hood), and washing up.
> . . .
> Employees who work in OSHA regulated areas and who are required to shower at the end of their shift will be provided with twenty (20) minutes washup time prior to the end of the Employee's shift, or a daily additive in an amount calculated at four-tenths (0.4) of an hour at the Employee's Base Rate of Pay, at [U.S. Steel's] choice. Existing local practices which may permit more than twenty (20) minutes of such wash-up time shall not be affected by this agreement.

(ECF No. 1-2, at 131).

because the claim required interpretation of a labor contract. *See Vadino v. A. Valey Engrs.*, 903 F.2d 253, 266 (3d Cir. 1990); *Townsend v. BC Natural Chicken LLC*, No. 06-cv-4317, 2007 WL 442386 (E.D. Pa. Feb. 2, 2007); *Drake v. Hyundai Rotem USA*, No. 13-cv-0868, 2013 WL 4551228 (E.D. Pa. Aug. 28, 2013).

The Third Circuit has explicitly distinguished several of the cases cited by U.S. Steel from cases where plaintiffs "rely solely on their statutory, rather than their contractual, right to recovery." *Bell v. Se. Pa. Transp. Auth.*, 733 F.3d 490, 496 (3d Cir. 2013) (collecting cases). Both *Amtrak* and *Bell*, as well as *Vadino* and the various district court cases cited, return to the same question—whether the claim at issue required interpretation of the involved labor agreement. *See Amtrak*, 989 F.2d at 115; *Bell*, 733 F.3d at 496. So the Court must answer that question as to this specific case: whether *this* claim requires interpretation of *this* labor agreement.[6]

Here, Nadalin alleges no violation of the BLA, and does not rely on a right contained in the BLA for recovery. The question to be litigated in this action is not whether certain workplace activities of employees trigger overtime premium pay under the BLA, but instead whether the PMWA does so. That may require consulting the BLA to determine if such activities are actually required, but that does not mean the claim and the BLA are inevitably intertwined. *See Livadas*, 512 U.S. at 124.

U.S. Steel says that, as in *Amtrak*, "it is impossible to determine whether [the allegedly uncompensated time] is part of the duties of the employee without interpreting the collective bargaining agreement to see exactly what the duties of the employees are." 989 F.3d at 115

---

[6] U.S. Steel also says that the BLA applies across states, and holding that there is not preemption here would undermine the principles of uniformity underlying § 301 preemption. *See Lucas Flour*, 369 U.S. at 103. This is beside the point: if the claim required interpretation of the BLA such that the agreement would apply differently at the Edgar Thomson plant, then the claim would be preempted. But if the claim requires no interpretation of the BLA, the terms of the BLA remain the same at the Edgar Thomson plant as elsewhere. The argument merely restates the key question: does this claim require interpretation of the BLA?

(cleaned up). It points to the provisions of the BLA that delineate between compensable and noncompensable activities, as well as provisions covering overtime pay. But those provisions recite the apparent agreement of the parties as to whether they are compensable as a matter of contract, not statute. The referenced provisions of the BLA are ultimately silent as to whether those pre- and post-shift activities are required for workers at the Edgar Thomson plant. *See Kline v. Security Guards, Inc.*, 386 F.3d 246, 256 ("That is, the mere fact that we must look at the CBA to determine that it is silent on any issue relevant to Appellant's state claims does not mean we have 'interpreted' the CBA.").

The Court takes no position as to whether Nadalin is actually entitled to be paid overtime premium pay as a matter of state law for the activities at issue. But answering the question involved will require determinations about whether work activities are considered "hours worked" under the PMWA, not the BLA. The relevant determination may require consulting the BLA as to the tasks employees perform while at the Edgar Thomson plant, but it will not require interpreting it. *See Lingle*, 486 U.S. at 413 n.12. As this Court noted in *Trainer*, the other conclusion would "run afoul of . . . precedent and could render the FLSA and its state law analogue ineffectual against [unfair practices] anytime there was a [labor contract] in some way connected to the dispute at issue." 743 F. Supp. 3d at 671.

The resolution of Nadalin's claims will require a factual determination of amount of PMWA overtime worked, if any, and a legal determination of whether that time is compensable, including possibly at premium rates, under the PMWA. *See id.* ("More critically, there is not a contract interpretation question here, but only one of how the extra pension contributions involved here are to be characterized for statutory purposes."). Neither determination requires interpreting a term of the BLA. Therefore, "complete preemption" does not apply in this case.

**III. Conclusion**

Nadalin brings claims based only on Pennsylvania state law. U.S. Steel removed to this Court on the basis that LMRA "complete preemption" conferred federal question subject matter jurisdiction. Because the Court has determined that such LMRA preemption does not apply, this case does not arise under federal law and the Court has no jurisdiction over the case. The Court will therefore GRANT Nadalin's Motion to Remand to state court.

The case is REMANDED FORTHWITH to the Court of Common Pleas of Allegheny County, Pennsylvania. All other pending Motions are DISMISSED WITHOUT PREJUDICE.

s/ Mark R. Hornak
Mark R. Hornak
Chief United States District Judge

Date: May 15, 2025


ecf:            All counsel of record